UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA, New York, N.Y.

v. 25 Cr. 120 (AT)

ERALD ALIMEHMETI,

Defendant.

------------------------------x

November 9, 2026

Before:

HON. GARY STEIN,

U.S. Magistrate Judge

APPEARANCES

JAMES M. McDONALD
United States Attorney for the
Southern District of New York
BY: JANE CHONG
CHELSEA L. SCISM
Assistant United States Attorneys

SABRINA P. SHROFF
Attorney for Defendant

KREINDLER & KREINDLER LLP
Attorneys for Defendant
BY: MEGAN WOLFE BENETT

THE CLERK: In the matter of 25-cr-501, U.S.A. v. Alimehmeti.

Counsel, would you please state your name for the record, starting with the government.

MS. SCISM: Good morning, your Honor. Chelsea Scism and Jane Chong for the government.

THE COURT: Good morning.

MS. SHROFF: For Mr. Alimehmeti, Sabrina Shroff and Megan Benett. Mr. Alimehmeti is seated in the middle.

THE COURT: Good morning to all of you.

MS. SHROFF: Good morning to all of you.

THE COURT: All right. Mr. Alimehmeti, I am Judge Stein. We are here because you have been charged with certain crimes in a superseding indictment that was returned by the grand jury last week, and we are here to arraign you on the superseding indictment.

Is that correct, counsel?

MS. SCISM: That is correct, your Honor. Thank you.

MS. SHROFF: Well, your Honor, there is a preliminary matter that I would ask the Court to hear us on.

THE COURT: Please turn that off.

MS. SHROFF: I was not over --

THE COURT: Please --

MS. SHROFF: I was --

THE CLERK: -- silence your cell phone.

MS. SHROFF: I did. I did. I was trying to reach somebody in the District Executive's office. Sorry about that.

I am happy to hold that colloquy until the end or if the Court wants to hear it now. It does pertain to documents that were read to our client, who is represented and has been represented for two years now, by the FBI agent sitting in the court, with no notice to defense counsel. And an arrest warrant was shown and provided to him, which was also not provided to us until we walked into the courtroom today and asked why our client had been approached by FBI agents when it would have made perfect sense to approach the representative for the client.

The government's position is, and I quote, "We did nothing wrong," unquote. Whether something is right or wrong isn't always the question. The question is also whether the Department of Justice needs to do things that are much more appropriate than what is required of them.

Our client --

THE COURT: What is it that you say they did?

MS. SHROFF: They had him escorted out of his cell in the marshal cellblock. I am assuming they put him in a room and they had the agents read him certain information. I do not know why. I do not know what the information was, because neither myself nor Ms. Benett were given an opportunity to be

present. In fact, despite the government knowing our phone numbers, our cell phone numbers, and our e-mail addresses, we were never once told that this was going to happen.

THE COURT: Do you contend that there was any questioning of your client?

MS. SHROFF: I do not know because I do not think my client is an accurate narrator and certainly do not trust, now, either the government or the FBI.

THE COURT: All right. Ms. --

MS. SHROFF: And, and, our concerns about our client's limitations are known to these prosecutors, not just from defense counsel, but from the discovery itself.

THE COURT: I'm sorry. When you refer to your client's limitations --

MS. SHROFF: Yes.

THE COURT: -- what are you referring to?

MS. SHROFF: Including his mental health limitations, his ability to process limitations, his ability to protest being dragged out of a cell and being taken to speak with the FBI or to have documents read to him. The whole question --

THE COURT: Do you have any facts to support that he was dragged out of his cell, as you just stated.

MS. SHROFF: Well, to me, if somebody is not giving you a choice, that is being dragged.

THE COURT: Was he literally on the ground being

dragged? Is that --

MS. SHROFF: No, I don't think he --

THE COURT: Is that what you are representing to the Court?

MS. SHROFF: No, I don't think that he --

THE COURT: You saying anything different than that he was taken from the cell into a room?

MS. SHROFF: He wasn't taken. Because to take somebody requires -- assumes that there was choice.

THE COURT: All right.

MS. SHROFF: If I take you somewhere, that -- I am assuming that you are coming along voluntarily.

THE COURT: Well, he --

MS. SHROFF: He doesn't have any choice.

THE COURT: -- is detained. He doesn't have a choice --

MS. SHROFF: He does.

THE COURT: -- in terms of his ability to come to court today, for example.

MS. SHROFF: He does.

THE COURT: And the --

MS. SHROFF: He has a right to refuse.

THE COURT: -- marshals and the F -- excuse me?

MS. SHROFF: He has a right to refuse to come to Court. If he is --

THE COURT: Well, is he refusing? Has he indicated a refusal to come to court?

MS. SHROFF: What I am saying to you is he does have that choice. Unfortunately, today he --

THE COURT: I am just trying to understand the accuracy of your representation to the Court that the man was dragged out of his cell, because I don't see any facts that you have stated to support that characterization.

MS. SHROFF: I believe that when somebody is escorted out of a place and taken someplace else without their consent, that is tantamount to being dragged. I don't think drag has --

THE COURT: Okay. So --

MS. SHROFF: -- only physical --

THE COURT: All right. He was escorted.

MS. SHROFF: -- connotation to it.

THE COURT: Okay.

MS. SHROFF: If you want to call it escorted. I wouldn't call it escorted, because I would call escorted having a voluntary component. There was no choice on his part.

THE COURT: Well, that's right.

MS. SHROFF: Right.

THE COURT: There is no choice.

MS. SHROFF: I don't think that is true.

THE COURT: He has to appear in court for the arraignment.

MS. SHROFF: He wasn't brought for the arraignment, though. If he was brought to you, of course I wouldn't be standing up and protesting it. He was taken to a room and sat in front of the two FBI agents.

THE COURT: Okay.

MS. SHROFF: Right? There is a distinction between being dragged -- being brought to court and being brought to sit --

THE COURT: I understand.

MS. SHROFF: -- in a room with the FBI.

THE COURT: All right. I understand.

Ms. Scism?

MS. SCISM: Thank you, your Honor.

The defendant was brought to 500 Pearl today by the U.S. Marshals at the request of defense counsel for today's arraignment. While he was in the cell block at this courthouse, two FBI agents, with the permission of the marshals, entered his cell and presented him with an arrest warrant to effectuate his arrest on the superseding indictment. They did not remove him from his cell or put him in a different room. They simply read to him the charges that are listed on the arrest warrant and left.

We attempted to present the arrest warrant to

Ms. Shroff this morning, and she -- excuse me, just to be clear, present it to Ms. Shroff after her client was rearrested, and she declined to accept a copy of the warrant. The defendant was not interviewed or questioned in any way.

THE COURT: Or brought to a separate room?

MS. SCISM: Correct.

MS. SHROFF: See, this is why we say our client—and this fact is known to the government—is not a proper narrator. And they know this from -- not just from me, not just from Ms. Benett, but from the discovery in their own possession. His limitations are known to them.

THE COURT: Well, that doesn't mean that they don't do their job.

MS. SHROFF: That isn't their job, though, your Honor --

THE COURT: Well, Ms. Scism --

MS. SHROFF: -- and there was --

THE COURT: Excuse me.

Ms. Scism, is it normal and/or required when a superseding indictment is issued (a) for an arrest warrant to be issued and (b) for it to be read to the -- served upon and read to the defendant?

MS. SCISM: Your Honor, in every case, it is not necessary. In this case, we determined that it was necessary for the defendant to be arrested in the Southern District of

New York. And the way that he was arrested by was by having the arrest warrant presented to him. And a similar practice has been done in at least two other cases in this district in the last approximate year.

THE COURT: All right. And that has to do with the fact that venue here is predicated not, as it normally is, on the commission of the offense in the Southern District of New York, but on the allegation that the offense was committed elsewhere, but he was brought to the Southern District of New York. Is that correct?

MS. SCISM: That is exactly right, your Honor, that he was first arrested in the Southern District of New York.

THE COURT: Okay.

MS. SHROFF: Was there --

THE COURT: Okay. Thank you.

MS. SHROFF: -- a reason -- in the other two cases, I believe that was on defense notice.

THE COURT: (Indiscernible).

MS. SHROFF: No notice was --

THE COURT: (Indiscernible).

MS. SHROFF: -- provided to -- I would like to make a record.

No notice was provided to defense counsel despite knowing who defense counsel are. No arrest warrant was provided ahead of time so that the client could be told what

was going to happen to him. The two defense lawyers did not know that the arrest warrant was going to be effectuated in the marshal's pens. We had no reason to know because the government chose to proceed this way. And we know of no other case in which the government has acted this way without providing notice to the defense lawyers.

More importantly, if this was planned by them, and the FBI agents didn't just go rogue and do it on their own, it really is confusing to all of us why a simple notice provision was not used, a simple e-mail saying "we are going to do the procedure this way" would have been sufficient, and all of this could have been avoided.

To do it this way, one, it undermines the confidence of the defendant in his assigned counsel; number two, it puts the defense lawyers at a disadvantage; and, three, it leaves Mr. Alimehmeti at a disadvantage.

THE COURT: All right. I let you make your record. I am not sure there is any issue for me to decide. If you think there is any relief that is warranted, I assume you will make an appropriate application before Judge Torres. But on the basis of what is before me, I don't see any reason for me to grant any relief, including, to the extent you are asking for it, any criticism of what the government has done here.

MS. SHROFF: I don't need the court to sign off on criticizing the government. I think I am perfectly able to

criticize the government as much as I feel that is adequate here.

But I do want the record to be entirely clear: We do not consent to having the government or any FBI agent approaching Mr. Alimehmeti going forward. I mean, obviously, we didn't think we needed to say this to the government before today, but to the extent it needs to be said, and apparently it does, we do not consent to him being spoken to, approached, or in any way accosted by law enforcement when he is represented by counsel.

And most importantly, the government had ample opportunity to tell us this. They chose not to do this. So I am telling the Court that I have asked them not to do this. Their response has been that they will do as they see fit, and we continue to object to that.

Our client does not consent to that procedure going forward. And in the future, if they chose to do this, they should ask him, and he will not consent.

THE COURT: Very well. Thank you. I have let you made make your record. Shall we proceed with the arraignment?

MS. SHROFF: Sure.

THE COURT: All right.

All right. So, Mr. Alimehmeti, I have before me the superseding indictment that was returned by the grand jury against you, and it charges you in two counts, as the original

indictment did. And the charges are somewhat similar to those in the original indictment, but they are different; and, indeed, they rely on different statutory provisions under the United States Code. They charge you with what are actually different crimes.

So, Count One charges you with the crime of providing and attempting to provide material support and resources for acts of terrorism, and it alleges that, from at least in or about June 2019 up to and including in or about November 2024, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, you, unknowingly and intentionally, provided and attempted to provide material support or resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(1), knowing and intending that this material support and resources were to be used in preparation for and in carrying out one or more of the following federal crimes: first, using, threatening, and attempting or conspiring to use a weapon of mass destruction; second, bombing and attempting to bomb places of public use, government facilities, public transportation systems, and infrastructure facilities; and, third, using, threatening, and attempting to use, and to cause another to use, any chemical weapon and assisting and inducing in any way any person to do (indiscernible). And those charges are brought under Title 18, United States, Code Sections 2339A, 3238, and 2.

The second count in the superseding indictment charges you with development, production, and use of chemical weapons, and it charges that, from at least in or about June 2019 up to and including in or about November 2024, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, you disseminated online materials, information, and instructions on how to make and use chemical weapons capable of causing death, temporary incapacitation, and permanent harm to humans, and that charge is brought under Title 18, United States Code, Sections 229, 3238, and 2.

The superseding indictment also contains forfeiture allegations against you, and it seeks to forfeit, as a result of your commission of the offenses charged in the indictment, any and all property that constitutes or is derived from proceeds traceable to the commission of those offenses, as well as any and all assets -- any and all of your assets, foreign and domestic, as well as assets affording you a source of influence over any -- over any entity or organization engaged in planning or perpetrating those offenses, any assets acquired or maintained for the purpose of supporting, planning, conducting, or concealing the alleged offenses and any assets involved in or intended to be used to commit said offenses.

Mr. Alimehmeti, have you seen the superseding

indictment?

THE DEFENDANT: Yes.

THE COURT: And Ms. Shroff, have you reviewed the superseding indictment with your client?

MS. SHROFF: Well, your Honor, one additional note.

This is in fact not a proper superseding indictment, and I want to make sure that Mr. Alimehmeti understands this, as does the Court.

In yet another unorthodox move by the United States Attorney's office, represented by these two, the government has informed us that the prior indictment, which now carries one charge of material support to a 2339B, remains in place. So when one tells a defendant that there is a superseding indictment, the word "supersede" normally means, to the average person, that you have superseded, meaning abdicated version one and are now moving forward on version two.

Well, I think maybe, since the Court has been loath to criticize them for other things, but criticized me for the word "dragged," I just wanted to make clear that this is, in fact, not a superseding indictment. They have now told us that the first count remains in place, and they have added two counts on a separate indictment. So I don't know the word for that. Maybe it is an additional indictment? Maybe it is a supplemental indictment? I don't know what it is.

And the other thing I just wanted to make sure before

I forget. I think the government -- I ask you for this relief. I want the government to put on the record the other two cases in which they have spoken to a represented defendant with their FBI agent in the pens without neither lawyer having notice or being present. And I would also like to know on the record the name of the two FBI agents who did that.

Thank you.

THE COURT: Thank you.

I will reject your latter request to require the government to provide that information, but I will ask Ms. Scism to respond to Ms. Shroff's statement that, in the government's position, Count One, at least, of the original indictment remains a pending charge in this case? Is that correct?

MS. SCISM: That is correct, your Honor. The original indictment includes two counts. The second count has been dismissed by Judge Torres, and the first count remains pending. We have informed Judge Torres of our position that we intend to proceed to trial on the first count of the original indictment and both counts of the superseding indictment, and provided her with ample case law supporting the position that a superseding indictment does not automatically dismiss the first indictment.

Defense counsel has asked Judge Torres for an opportunity to respond to our letter in writing, which they

have told the Court they would do today. And Judge Torres has indicated that she would hold on ruling on any request that the defense may have until they have an ability to file something.

THE COURT: All right.

MS. SHROFF: Your Honor, for the record --

THE COURT: Yes.

MS. SHROFF: -- their ample opportunity consists of citation to one case, which is not even the main opinion. I believe it is a concurrence, and they cite to one case in doing so.

Secondly, they gave us no notice of this so that we had to figure this out after we had filed a motion to sever the trial counts.

And the third thing is this: Apparently, now I am told that there were three agents. I do not know why the Court is not granting us the relief of knowing the names of the three agents. And I am also confused as to why the Court will not tell the government to tell us which other two cases they have used this unorthodox practice in, because I think that does go both to us being properly prepared in terms of filing a motion and also goes to the government's credibility.

So I renew my request to get that information. If, for any reason, these FBI names are secret, I wouldn't know why, because apparently they did nothing improper, so their

names should be publicly available.

I mean, there is -- there is something to be said of transparency, since we have almost completely lost the rules of, what is it called? Reliability. What is it? I don't know what rule. It seems -- regularity. Since that has gone by the wayside now, I ask again for this information. And if you are still inclined to deny me that relief, I ask the government to provide that information to you so that it be maintained for the record when we go up to Judge Torres or even to the Second Circuit.

THE COURT: All right. I again deny the request. I have been asked by Judge Torres to conduct an arraignment on the second -- on the superseding indictment. I don't believe I have any authority, quite frankly, to order the government to do what you are asking me to order them to do. You will have to take that up with Judge Torres. Okay?

MS. SHROFF: That's fine, your Honor. But you did ask them if this had been done in any other case, and they told you two cases. So I think it is within your powers to ask them which two cases.

THE COURT: All right. Thank you for sharing that.

All right. So can you now answer my question, which was whether you have reviewed a copy of the superseding indictment with your client?

MS. SHROFF: I did not, but Ms. Benett did.

THE COURT: Ms. Benett, is that correct?

MS. BENETT: That is correct, your Honor.

THE COURT: All right. And do you waive a more detailed reading of the charges?

MS. BENETT: We do.

THE COURT: And are you prepared to enter a plea to the superseding indictment at this time on behalf of your client?

MS. BENETT: Mr. Alimehmeti -- do you want me to -- yeah.

Mr. Alimehmeti enters a plea of not guilty on the supplemental indictment charges.

THE COURT: A plea of not guilty will be entered, and the record should reflect now that the defendant has been arraigned on the superseding indictment.

Ms. Scism, based on my review of the docket, it did not appear to me that a *Brady* order was issued in this case previously, and so I intend to do that unless you have information to the contrary.

MS. SCISM: I do not know one way or the other, your Honor, and have no objection to the Court issuing an order.

THE COURT: All right. So I will do so both orally and in writing.

In accordance with Federal Rule of Criminal Procedure

5(f), I remind the prosecution of its obligation, under *Brady v. Maryland* and its progeny, to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution.

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations in this regard and will fulfill them?

MS. SCISM: Yes, your Honor.

THE COURT: All right. Is there anything further on this matter we should be doing?

MS. SCISM: Nothing from the government. Thank you.

THE COURT: Anything further on behalf of Mr. Alimehmeti?

MS. SHROFF: Yes, your Honor.

We would like the Court to order us, pursuant to the Criminal Justice Act, the funds to order a copy of this transcript on an expedited basis so we can present it to

Judge Torres.

THE COURT: Any objection?

MS. SCISM: No objection.

THE COURT: All right.

MS. SHROFF: Oh, I am sorry. And I do think the government should bear the cost, at least split the cost, because all of this is a creation of their doing.

Thank you.

THE COURT: Well, that -- that -- I am not sure how that works, since this is all public funds, but that request is denied. But I will order that the transcript be prepared on an expedited basis.

MS. SHROFF: Thank you.

THE COURT: Thank you.

(Adjourned)

C E R T I F I C A T E

I, Kristen J. Carannante, certify that the transcript of the digital audio recording of the proceedings in the above-entitled matter is a true and accurate transcription.

Signature /s/ *Kristen J. Carannante*
KRISTEN J. CARANNANTE, RPR, RMR, FCRR
(848) 459-3124
kjcarannante@gmail.com

Date: November 9, 2026