**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

- v. -

ERALD ALIMEHMETI,

Defendant.

25 Cr. 120 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ERALD ALIMEHMETI'S OMNIBUS MOTION *IN LIMINE***

Sabrina P. Shroff, Esq.
Megan Wolfe Benett, Esq.

*Attorneys for Defendant*
*Erald Alimehmeti*

**TABLE OF CONTENTS**

**Page**

## Contents

PRELIMINARY STATEMENT ........ 1
BACKGROUND ........ 2
ARGUMENT ........ 3
POINT I: THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT THAT RELATE ONLY TO DISMISSED COUNT TWO ........ 4
A. The Count Two evidence ........ 4
B. The Count Two evidence should be excluded under Fed.R.Evid. 401 through 403 . 4
POINT II: THE COURT SHOULD PRECLUDE ARGUMENT THAT INDEPENDENT ADVOCACY OR SELF-EQUIPPING IS “PERSONNEL” OR “SERVICES,” AND SHOULD GIVE A LIMITING INSTRUCTION UNDER 18 U.S.C. § 2339B(h) ........ 5
A. The statute reaches only conduct under ISIS direction or control ........ 5
B. Much of the government’s proof is independent conduct ........ 6
C. Requested relief and proposed instruction ........ 7
POINT III: THE COURT SHOULD ACCEPT THE DEFENSE STIPULATION ON FTO STATUS AND KNOWLEDGE AND EXCLUDE ISIS ATROCITY AND PROPAGANDA EVIDENCE ........ 7
A. The atrocity evidence ........ 7
B. The defense will stipulate to the facts this evidence is offered to prove ........ 8
C. Requested relief ........ 9
POINT IV: THE COURT SHOULD EXCLUDE MR. ALIMEHMETI’S ALBANIAN ARRESTS AND CONVICTIONS, THE RELATED PRESS REPORTS, AND HIS CONDUCT IN PRETRIAL DETENTION ........ 10
A. The other-act evidence ........ 10
B. The evidence fails the Second Circuit four-part test ........ 11
C. Requested relief ........ 12
POINT V: THE COURT SHOULD EXCLUDE EVIDENCE OF SAJMIR ALIMEHMETI’S CASE, CONVICTION AND SENTENCE ........ 12
A. The brother evidence ........ 12
B. A relative’s conviction does not bear on the question of Mr. Alimehmeti’s guilt .. 13
C. If any reference to the brother is permitted, it must be neutral ........ 14
POINT VI: THE COURT SHOULD REQUIRE PROPER AUTHENTICATION AND FOUNDATION FOR THE SCREENSHOTS, ACCOUNT ATTRIBUTION, TRANSLATIONS, AND ALBANIAN-SEIZED LAPTOP ........ 14
A. The foundation problems ........ 14
B. Governing law ........ 15
C. Requested relief ........ 16

POINT VII: THE COURT SHOULD PRECLUDE CASE-AGENT OVERVIEW AND INTERPRETIVE TESTIMONY, UNDISCLOSED EXPERT OPINION, BOLSTERING OF INFORMANTS, AND PREJUDICIAL LABELS ... 16

A. The agent narrative and the FD-1023s ... 16

B. Governing law ... 17

C. Requested relief ... 18

CONCLUSION ... 18

## PRELIMINARY STATEMENT

Defendant Erald Alimehmeti respectfully moves *in limine* for an order governing the admission of evidence and argument at his trial on the sole remaining count of the original indictment ("Original Indictment"), which charges an attempt to provide "material support or resources," including "personnel and services," to the Islamic State of Iraq and al-Sham ("ISIS"), in violation of 18 U.S.C. § 2339B. ECF Doc. No. 15 at ¶ 1.[1]

The case the jury must decide as to the Original Indictment is narrow. Count Two, which charged the distribution of information relating to explosives and weapons of mass destruction under 18 U.S.C. § 842(p), has been dismissed. ECF 65. The only question remaining is whether the government can prove beyond a reasonable doubt that Mr. Alimehmeti knowingly attempted to provide personnel or services to ISIS. The risk at trial is that this narrow question will be buried under evidence that has little to do with it and that, by its nature, will inflame the jury: details about explosives and cyanide material tied to the dismissed count; the conviction of Mr. Alimehmeti's brother; Albanian arrests and prison disputes; ISIS atrocities committed by others; an agent's narrative gloss on the evidence; and digital material of uncertain origin. The seven motions below are each designed to keep the trial focused on the conduct actually charged in Count One, and ensure the jury relies only on evidence related to that charge when considering its verdict.

[1] The defense has moved to sever the two charges in the "superseding" indictment returned last week. ECF Doc. No. 77. Should this Court not grant that motion, we ask that a new schedule be set for any *in limine* motions relating to the two new charges.

## BACKGROUND[2]

Erald Alimehmeti is a dual citizen of the United States and Albania who moved to Albania in 2014. ECF Doc. No. 1 at ¶ 4.. He was imprisoned in Albania from about August 2015 until about May 2019, and again from about November 2020 until about July 2022. *Id.* The Original Indictment charges an attempt to provide material support to a foreign terrorist organization, specifically, ISIS, from June 2019 through November 2024. ECF Doc. No. 15 at ¶ 1.

The government's case rests principally on online communications between Mr. Alimehmeti and a paid FBI confidential human source ("CHS")[3] and an FBI online covert employee ("OCE"), both of whom were "posing as ISIS supporters" and "preserved screenshots of their conversations." ECF Doc. No. 1 at ¶ 5. The government also relies on social-media posts; Telegram channels that Mr. Alimehmeti allegedly administered; a laptop seized by Albanian authorities; and gear that an acquaintance in the Bronx ("Individual-1") purchased for him. ECF Doc. No. 1 at ¶¶ 9–15. Mr. Alimehmeti was arrested upon his return to the United States on November 21, 2024 and gave an approximately 88-minute recorded post-arrest interview. *See* Exhibit A hereto, filed under seal, at USAO_002521, USAO_003038-39.

---

[2] The government has not yet served its exhibit list or its notice under Fed.R.Evid. 404(b)(3). Accordingly, this motion is based on the complaint, the Original Indictment and the discovery produced to date. Mr. Alimehmeti respectfully reserves the right to supplement these motions once those materials are served.

This Court previously entered a Protective Order governing "Disclosure Material," which includes Rule 16 discovery, and certain items designated "Attorney's Possession Only" ("APO") or "Attorney's Eyes Only") ("AEO"). ECF Doc. No. 18. To avoid any inadvertent issues with the Protective Order, all materials are being provisionally filed under seal and any that are not subject to the sealing provision will be re-docketed publicly .

[3] The CHS has been "a paid informant for the FBI since approximately 2017." ECF Doc. No. 1 at n.2.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and … the fact is of consequence in determining the action." Fed.R.Evid. 401. Even relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

"The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence is unfairly prejudicial when it has "some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission," including a "tendency . . . to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *see also United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008) ("The question is not whether the evidence was suggestive of guilt—as all relevant evidence offered against the defendant would suggest guilt—but rather, whether "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.") (quoting *Figueroa*). In assessing that prejudice, "the discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives." *Old Chief*, 519 U.S. at 184–85. The Court must "conscientiously balance[]" probative value against the risk of prejudice and even after doing so, if evidentiary alternatives can "cabin" the prejudice to a defendant, failing to implement them constitutes reversible error. *United States v. Al-Moayad*, 545 F.3d 139, 159–60 (2d Cir. 2008).

## POINT I: THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT THAT RELATE ONLY TO DISMISSED COUNT TWO

### A. The Count Two evidence

Much of the complaint's most alarming material was offered to support the § 842(p) count, which is no longer in the case. That material includes: (1) chats in which Mr. Alimehmeti allegedly described to the CHS how to make two chemical substances = and stated that one could be sprayed on "large crowds in concerts," (ECF Doc. No. 1 at ¶ 10(d)–(e); (2) an ISIS video on making TATP explosives posted to the "!nGhimasi Tactical Solucion" channel, (ECF Doc. No. 1at ¶ 11(b)(ii); (3) two posts about extracting cyanide, with comments referring to "Biological Warfare," (ECF Doc. No. 1 at ¶ 9(i)); (4) fragments of "The Anarchist Bomb Cookbook Manual" on the laptop, (ECF Doc. No. 1 at. ¶ 14(c)); and (5) explosive-synthesis files, including PETN, picric acid, white phosphorus and RDX, catalogued from the laptop and the Telegram channel, (Exh. A at USAO_003049).

### B. The Count Two evidence should be excluded under Fed.R.Evid. 401 through 403

This material does not make it more or less probable that Mr. Alimehmeti attempted to provide himself or services to work under ISIS's direction or control, as charged in Count One. Fed.R.Evid. 401. Whether a person shared chemistry videos or wrote about cyanide was the subject of Count Two; it is not an element of Count One. Whatever marginal relevance the evidence may retain is substantially outweighed by its tendency to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *Old Chief*, 519 U.S. at 180, and specifically on a theory the Court has removed from the case.

The Second Circuit has upheld the admission of uncharged terrorism-related evidence where it was "no more inflammatory than the charges alleged in the indictment," *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010), or "not especially worse or shocking than the

transactions charged," *id.* at 133 (quoting *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009)). The converse is true here. Instructions for spraying crowds with chemicals and synthesizing explosives are far more frightening than the conduct that remains charged, and therefore should be excluded under Fed.R.Evid. 403. The government may argue that the evidence provides "background" or completes the "narrative." *See United States v. Williams*, 585 F.3d 703, 707–08 (2d Cir. 2009). But while the narrative principle may allow the government to tell the story of the crime on trial it certainly does not permit the government to try a dismissed count through the back door. This Count Two evidence is not necessary to complete the narrative on Count One.

For these reasons, the Court should preclude the government from offering this evidence or referring to it in opening or summation. In the alternative, the Court should require the government to proffer in writing, before trial, each item it intends to offer and the specific Count One issue to which it relates. Any item admitted should be presented in sanitized form (for example, as "instructional materials" without the content of the instructions) and accompanied by a limiting instruction under Fed.R.Evid. 105.

## POINT II: THE COURT SHOULD PRECLUDE ARGUMENT THAT INDEPENDENT ADVOCACY OR SELF-EQUIPPING IS "PERSONNEL" OR "SERVICES," AND SHOULD GIVE A LIMITING INSTRUCTION UNDER 18 U.S.C. § 2339B(h)

### A. The statute reaches only conduct under ISIS direction or control

No person may be prosecuted for providing "personnel" "unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control." 18 U.S.C. § 2339B(h). "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be

considered to be working under the foreign terrorist organization's direction and control." *Id.* The statute must not be "construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment." *Id.* § 2339B(i). Even the interviewing agent told Mr. Alimehmeti that the government has "no problem with . . . people online discussing religious doctrine." Exhibit A at USAO_000069.

The Supreme Court has made clear that "any independent advocacy . . . is not prohibited by § 2339B;" "service" only covers "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Humanitarian Law Project*, 561 U.S. at 24. The Second Circuit has likewise explained that § 2339B "leaves persons free to say anything they wish on any topic, including terrorism. It does not prohibit independent advocacy of any kind. It does not prohibit or punish mere membership in or association with terrorist organizations." *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011) (emphasis omitted). "[M]ere association is different than working or assisting in the operation of a terrorist organization." *United States v. Nagi*, 254 F. Supp. 3d 548 (W.D.N.Y. 2017) (quoting *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 168 (E.D.N.Y. 2008)). "It is work under the terrorist organization's direction or control . . . that [§ 2339B] seeks to prohibit." *Id.* (quoting *Taleb-Jedi*, 566 F. Supp. 2d at 176).

**B. Much of the government's proof is independent conduct**

Much of the government's evidence describes activity that Mr. Alimehmeti undertook on his own: pro-ISIS posts on social-media accounts it says were his, (ECF Doc. No. 1 at ¶ 9 ); a Telegram channel with approximately 45 subscribers that the government says he administered, (ECF Doc. No. 1 at ¶ 11(b)); gear he asked to be shipped "so I can continue my training," (ECF Doc. No. 1 at ¶ 10(b) ); and items Individual-1 purchased with money sent from Albania, without knowing why Mr. Alimehmeti wanted them, (ECF Doc. No. 1 at ¶ 15(a)–(b) ).

Whether Mr. Alimehmeti attempted to place himself under ISIS's direction or control is a question for the jury. But the government should not be permitted to argue, or to invite the jury to conclude, that posting propaganda, running one's own channel, expressing support for ISIS, or buying equipment for one's own use is itself the provision of "personnel" or "services" to a foreign terrorist organization. Such an argument would misstate the law and ask the jury to convict for speech and association that the statute expressly leaves unpunished.

### C. Requested relief and proposed instruction

The Court should (1) preclude argument that independent advocacy, speech, association or self-equipping constitutes material support; and (2) rule before trial, under Fed.R.Crim.P. 30, that it will give the following instruction, both as a limiting instruction when such evidence is received, Fed.R.Evid. 105, and in the final charge:

> "The government must prove beyond a reasonable doubt that Mr. Alimehmeti knowingly attempted to provide ISIS with personnel, meaning himself or another person, to work under ISIS's direction or control, or attempted to provide services in coordination with or at the direction of ISIS. A person who acts entirely independently of ISIS to advance its goals or objectives is not working under ISIS's direction or control. Independent advocacy, the expression of views or sympathy for ISIS, and association with others who hold those views are not crimes. You may not find Mr. Alimehmeti guilty on the basis of his speech, his beliefs, or activity he undertook independently of ISIS. You may consider such evidence only insofar as it bears on whether the government has proven the elements I have described."

## POINT III: THE COURT SHOULD ACCEPT THE DEFENSE STIPULATION ON FTO STATUS AND KNOWLEDGE AND EXCLUDE ISIS ATROCITY AND PROPAGANDA EVIDENCE

### A. The atrocity evidence

Paragraph 8 of the complaint lists ISIS attacks in Paris, Brussels, Nice, Kerman and Moscow and the 2017 truck attack in Manhattan, which was tried in this District, and it recites

State Department findings on mass executions, rape and the killing of children. ECF Doc. No. 1 at ¶ 8(c), (e). Mr. Alimehmeti is not alleged to have had any connection to any of those events. The exhibits also include a video of U.S. Special Forces being killed in Niger (*id.* at ¶ 9(e)); a photograph of an ISIS figure in front of severed heads (*id.* at ¶ 10(a)); "Inside the Khalifa" and "Flames of War" fragments on the laptop ( *id.* at ¶ 14(a)–(b)); and a catalogue of 28 videos from USB drives seized at arrest, including execution footage. Exh. A at USAO_003048, USAO_003051–70. The FBI's own catalogue reports that many of those videos were "Not found" on any account attributed to Mr. Alimehmeti. *Id.* at USAO_003058–62.

**B. The defense will stipulate to the facts this evidence is offered to prove**

An element of the pending charge is that ISIS, to which Mr. Alimehmeti is alleged to have attempted to provide material support, is a foreign terrorist organization. Mr. Alimehmeti will stipulate that (1) ISIS was designated as a foreign terrorist organization at all times relevant to the indictment, and (2) he knew during the charged period that ISIS was a designated foreign terrorist organization and that it engaged in terrorist activity and terrorism, satisfying the knowledge element of 18 U.S.C. § 2339B(a)(1). With that stipulation, evidence that ISIS commits atrocities – ones with no association or connection with Mr. Alimehmeti personally - has little or no remaining probative value and is far too prejudicial.

In *Old Chief*, the Supreme Court noted that the Rule 403 analysis must take account of "evidentiary alternatives," and that where an alternative is available, the marginal probative value of the more prejudicial evidence is slight. 519 U.S. at 184–85. Rule 403 "permits a judge to consider both the defendant's willingness to stipulate and the potential for prejudice . . . in conducting the requisite [Rule 403] balancing." *Al-Moayad*, 545 F.3d at 160 (internal quotation marks omitted). And in *United States v. Monsalvatge*, 850 F.3d 483 (2d Cir. 2017) (Torres, J., concurring), the concurrence observed that the district court "should have considered other

means of admitting the facts of that similarity into evidence that would have avoided the unfairly prejudicial nature of the film clips." The same reasoning requires that the ISIS atrocity evidence be excluded from trial.

*Al-Moayad* is directly on point here. There, in a material-support prosecution, the Second Circuit reversed the convictions based on cumulative evidentiary errors, including the admission of testimony from a witness to a terrorist bombing that the defendants were not charged with and had no connection to, and inflammatory testimony about an al Qaeda training camp that went well beyond the government's proffer. 545 F.3d 139. By contrast, the Second Circuit has approved terrorism evidence that was "devoid of vivid imagery that might excite the jury." *United States v. Kadir*, 718 F.3d 115, 121 (2d Cir. 2013). Evidence of attacks committed by others, and videos that the FBI itself could not link to Mr. Alimehmeti's accounts, have no connection to the crimes charged here, and are wildly inflammatory. They should not be admitted into evidence, in particular when a stipulation establishes the very element that the government would seek to prove by their admittance.

**C. Requested relief**

The Court should accept the stipulation and exclude (1) evidence of ISIS attacks and atrocities with no connection to Mr. Alimehmeti, including the attacks listed in paragraph 8 of the complaint and the State Department findings; and (2) any video or image that the government cannot show Mr. Alimehmeti posted, sent or viewed. For items he allegedly posted or sent, the Court should limit the government to still images or brief excerpts sufficient to show what was shared, require that those excerpts be identified before trial for the Court's review, and give a limiting instruction. Any expert testimony about ISIS should be confined to the kind of "dry and academic" testimony approved in *Kadir*. 718 F.3d at 121.

## POINT IV: THE COURT SHOULD EXCLUDE MR. ALIMEHMETI'S ALBANIAN ARRESTS AND CONVICTIONS, THE RELATED PRESS REPORTS, AND HIS CONDUCT IN PRETRIAL DETENTION

### A. The other-act evidence

*The 2015 arrest.* Mr. Alimehmeti served an Albanian sentence from 2015 to 2019. Compl. ¶ 4. The government's production includes an Albanian newspaper article that the FBI describes as having reported that police "are assuming" the three men arrested "were about to execute an attack." Exh. A at USAO_002962). The government, however, has not translated the original article, which appears to report (based on a preliminary rough translation) that the police information was limited, that it had not been determined what crime might occur, and that even after the arrests it had not been possible to clarify what crime was involved. *Id.* at USAO_002963–64). Days after the arrest, Mr. Alimehmeti told U.S. consular officers that plainclothes officers had beaten him, that he did not resist, and that police "produced a small green gun at the scene." *Id*. at USAO_003124–26. The consular officers documented black eyes, facial cuts and bruised wrists that Mr. Alimehmeti had suffered. *Id.* at USAO_003125. On or about May 23, 2016, the defendant was convicted in the Tirana Judicial District Court in connection with those charges, and was sentenced to a period of prison of over a year.

*The 2020 arrest.* Albanian police approached Mr. Alimehmeti in November 2020 at the request of foreign officials, and he was thereafter arrested for assaulting one of the approaching officers. Exh. A. at USAO_002991. According to Albania's counterterrorism director, Mr. Alimehmeti "did not make any noteworthy statements," and Albanian authorities "had not obtained any new significant information" about him. *Id.* Nothing connects him to any crime other than resisting arrest. On November 3, 2021, the defendant was convicted in the Tirana Judicial District Court for opposition of a police officer, in violation of Article 236 of the Penal Code of Albania, and sentenced to two years and four months of imprisonment.

*Pretrial detention.* The government holds Bureau of Prisons records describing certain disciplinary accusations and findings. *See, e.g.,* Exh. A at USAO_002905. That conduct occurred more than a year after the charged period ended, has no connection to the underlying facts, and would poison the jury against Mr. Alimehmeti.

**B. The evidence fails the Second Circuit four-part test**

Although the Second Circuit takes an "inclusionary" approach to other-act evidence, that approach "is not a carte blanche to admit prejudicial extrinsic act evidence when . . . it is offered to prove propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (vacating conviction where evidence of previous cocaine conviction had been introduced; although both drug transactions involved cocaine, prejudicial effect on jury of criminal history outweighed any marginal probative value of prior conviction). Prior convictions offered without real need risk simply being "propensity evidence in sheep's clothing." *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009)). In *McCallum*, the Court found an abuse of discretion where the district court admitted prior convictions without conducting the required Rule 403 balancing test. 584 F.3d at 475–77. In *Garcia*, the Court found an abuse of discretion where the remoteness of a prior conviction and the absence of any meaningful connection to the charged conduct undercut its probative value. 291 F.3d 127. And in *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011), the Court held that a subsequent incident lacked sufficient parallel to the charged conduct to be admissible as proof of state of mind.

Those settled principles require exclusion here. The 2015 arrest and any resulting conviction predates the charged period by four years and the 2020 arrest and resulting conviction involved conduct that has no bearing on the instant charges. And the detention-related conduct concerns an argument over housing in a federal jail, not ISIS. It bears no parallel to an attempt to

provide personnel or services to a terrorist organization. *See Curley*, 639 F.3d 50. Each category, however, would wrongly invite the jury to conclude that Mr. Alimehmeti is a violent, criminal person and therefore likely guilty, which is precisely the inference Fed.R.Evid. 404(b)(1) forbids.

**C. Requested relief**

The Court should (1) exclude this "propensity" evidence from the government's case-in-chief; (2) direct the government to provide notice that complies with Fed.R.Evid. 404(b)(3), articulating the alleged permitted purpose for any other-act evidence it seeks to admit, and the reasoning that supports that purpose, at least three weeks before trial; and (3) if Mr. Alimehmeti elects to testify, rule in advance under Fed.R.Evid. 104(a) and 609(a)(1)(B) whether the Albanian convictions may be used for impeachment.

**POINT V: THE COURT SHOULD EXCLUDE EVIDENCE OF SAJMIR ALIMEHMETI'S CASE, CONVICTION AND SENTENCE**

**A. The brother evidence**

Mr. Alimehmeti's brother, Sajmir Alimehmeti ("Sajmir"), pleaded guilty in this District in February 2018 to attempting to provide material support to ISIS and was sentenced in December 2019 to 22 years in prison. ECF Doc. No. 1 at ¶ 7. The government's production in this case included Sajmir's 2016 formerly sealed complaint, which describes ISIS beheading videos and nasheeds (ISIS-produced music videos) that he played for undercover officers(Exh. A at USAO_SA_000002-15 at ¶¶ 14(c), 17(a); monitored 2015–2016 calls between the Sajmir and Erald Alimehmeti about prison life, a knife Sajmir carried and gun calibers, TESUR Reports (*id.* at USAO_002803–04, 002887–90); and a November 2018 letter from Mr. Alimehmeti to his brother about prison fights that included a line about Mosul and Raqqa and "no more jihad? Lol." ( *Id.* at USAO_002965); ECF Doc. No. 1 at ¶ 7. The government also produced a letter from Sajmir that was found in Mr. Alimehmeti's luggage at arrest , and a CBP report stating that

a USB drive taken from Mr. Alimehmeti at the airport "belongs to his incarcerated brother." Exh. A at USAO_000117–20).

**B. A relative's conviction does not bear on the question of Mr. Alimehmeti's guilt**

Sajmir's conviction, his plea and the length of his sentence are not facts "of consequence" as to whether Mr. Alimehmeti attempted to provide personnel or services to ISIS. Fed.R.Evid. 401. Their only real effect is to suggest that terrorism runs in the family, which is the kind of "adverse fact not properly in issue" that may "unfairly . . . excite emotions against the defendant." *Figueroa*, 618 F.2d at 943. If association with ISIS itself is not a crime, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 38 (2010), a family relationship with someone convicted of supporting ISIS surely is even less evidence of a crime.

The 2016 complaint charging Sajmir raises additional problems. It is an out-of-court statement that would be offered only to prove the truth of its contents, and is therefore hearsay to which no exception applies. Fed.R.Evid. 801(c), 802. 803. Some of it is hearsay within hearsay, such as the agent's account of an undercover officer's report that Sajmir said "he and his brother 'had our own plan' to travel from Albania to Raqqah." Sajmir Compl. ¶ 14(f) (USAO_000948); *see* Fed.R.Evid. 805. Its descriptions of beheading videos concern Sajmir's conduct in New York in 2015 and 2016, years before the charged period began, at a time when Erald Alimehmeti was in Albania.

Mr. Alimehmeti's 2015–2016 calls with his brother and the November 2018 letter are "other acts" subject to Fed.R.Evid. 404(b), and they too fall outside the charged period, which begins in June 2019. Original Indictment ¶ 1 (USAO_000001). Under the Second Circuit's four-part test, the government must show that the evidence is offered for a proper purpose, is relevant to a disputed issue, survives Rule 403 balancing, and is accompanied by a limiting instruction on request. *United States v. Garcia*, 291 F.3d at 136 (citing *Huddleston v. United States*, 485 U.S.

681, 691–92 (1988)). Calls about prison routine and a sarcastic letter about prison fights do not meet that test.

**C. If any reference to the brother is permitted, it must be neutral**

If the Court concludes that some reference to Sajmir is necessary (for example, to explain the letter found in Mr. Alimehmeti's luggage), the reference should be limited to the neutral fact that his brother was in the United States during the relevant period, without a reference to Sajmir's incarceration, let alone of the nature of the offense, the plea, or the sentence. Courts in this District have approved precisely this sort of sanitizing substitution. *See United States v. Fiumano*, 2016 WL 1629356, *4 (S.D.N.Y. Apr. 25, 2016) (describing a prejudicial background event as an "interpersonal issue … sufficiently defangs the potentially prejudicial context" while permitting the government to "tell a continuous story"). The same limitation should apply to the agents' references to Sajmir's guilty plea and "22 years in Supermax" during the post-arrest interview, which all should be redacted. Post-Arrest Interview Tr. (USAO_000097, 000105).

**POINT VI: THE COURT SHOULD REQUIRE PROPER AUTHENTICATION AND FOUNDATION FOR THE SCREENSHOTS, ACCOUNT ATTRIBUTION, TRANSLATIONS, AND ALBANIAN-SEIZED LAPTOP**

**A. The foundation problems**

*Screenshots and recordings.* The CHS and the OCE "preserved screenshots" of their conversations. ECF Doc. No. 1 at ¶ 5 & n.3. As to some, if not all, the government has stated that screen recordings "will be uploaded to appropriate case files separately due to file size restrictions." Exh. A at USAO_001428–29).

*Account attribution.* The complaint attributes the accounts to Mr. Alimehmeti based on the supposed "context, timing, subject matter, usernames, and language used in the communications." ECF Doc. No. 1 at n.4. The government will have to establish that the communications on the accounts were made by Mr. Alimehmeti as part of its case.

*Translations.* Many communications are "based on draft translations . . . and are subject to change." ECF Doc. No. 1 at n.1.

*The laptop.* The chain of custody for the "Alimehmeti Laptop" is at issue, as well. Albanian police seized a blue Dell laptop from the family's Tirana apartment in August 2015. Exh. A at USAO_002456. To the extent the government will seek to introduce the laptop or certain of its contents as proof that Mr. Alimehmeti was providing material support to ISIS, it will need to establish that Mr. Alimehmeti had control and use of that laptop at critical periods of time.

**B. Governing law**

To authenticate an item, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid. 901(a). "The bar for authentication of evidence is not particularly high," *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007), and once that threshold is met, remaining challenges generally go to weight, *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014). But the bar is real. "The type and quantum of evidence required is related to the purpose for which the evidence is offered." *Id.* at 130 (internal quotation marks and citation omitted). In *Vayner*, the Second Circuit reversed a conviction because "the mere fact that a page with [the defendant's] name and photograph … exist[s] on the Internet . . . does not permit a reasonable conclusion that th[e] page was created by the defendant or on his behalf." *Id.* at 132. Where relevance depends on a preliminary fact, such as whether Mr. Alimehmeti authored a post or used the laptop, the government must offer proof sufficient to support that finding. Fed.R.Evid. 104(b).

A duplicate is admissible to the same extent as an original "unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed.R.Evid. 1003; *see* Fed.R.Evid. 1002. Screenshots selected and captured by paid

informants, standing in for native recordings that exist but have not been produced in usable form, present exactly that question. With respect to foreign evidence and translated transcripts, the Second Circuit has looked to testimony from a foreign official with personal knowledge of how the evidence was obtained. *See United States v. Rommy*, 506 F.3d 108, 138 (2d Cir. 2007).

**C. Requested relief**

The Court should (1) hold a pretrial hearing under Fed.R.Evid. 104(a) and 104(c)(3) on the authentication of the screenshots, the attribution of each account the government intends to attribute to Mr. Alimehmeti, and the laptop; (2) order production under Fed.R.Crim.P. 16(a)(1)(E) of the native recordings and native files from which the screenshots were taken, together with the forensic reports and the tool information for the laptop extraction (to the extent not already produced); (3) require the government to immediately serve final, certified translations, identifying the translator of any foreign-language statements it intends to introduce at trial; and (4) preclude any testimony or argument that Mr. Alimehmeti viewed, downloaded or possessed any laptop artifact unless the government first establishes, through a qualified forensic witness, that he was the user who accessed it.

## POINT VII: THE COURT SHOULD PRECLUDE CASE-AGENT OVERVIEW AND INTERPRETIVE TESTIMONY, UNDISCLOSED EXPERT OPINION, BOLSTERING OF INFORMANTS, AND PREJUDICIAL LABELS

**A. The agent narrative and the FD-1023s**

The complaint repeatedly relies on the agent's "training and experience" to define terms such as "inghimasi," "sahawat" and "DC sniper" and to characterize Mr. Alimehmeti's intent. ECF Doc. No. 1 at nn.8, 11, 13. Footnote 9 in the Complaint illustrates the danger this poses. It asserts that a January 22, 2020 post reading "Revenge for Baghuz" expressed "support for attacks executed by ISIS supporters around the world *in April 2022*." ECF Doc. No. 1 at n.9

(emphasis added). A 2020 post cannot express support for attacks that occurred two years *after* that post. Yet that is what the agent swore to in the complaint.

The FBI's source reports present similar problems. They baldly describe Mr. Alimehmeti as an "ISIS member and attack planner," (Exh. A at USAO_001697–98, USAO_001760–61; (); mix the source's account with "FBI Comment" and "Source Comment" interpretations, (*e.g.*, *id.* at USAO_001506–09), ; and repeatedly characterize the source as "highly reliable" and "corroborated." *E.g.*, *id.* at USAO_001428–29), USAO_002166–67, *see also* ECF Doc. No. 1 at n.2. The source reports are not even consistent with one another. One July 2020 report includes an FBI comment that Mr. Alimehmeti "had become disenchanted with ISIS due to the organization's failing and had instead turned towards plotting against ISIS." *Id. at* USAO_002228.

**B. Governing law**

The Second Circuit is "cautious of 'the risk that dual police testimony may prejudice defendants at trial, both inflating an officer's expert opinions through his personal involvement in the case and bathing his lay testimony in the aura of 'expertise.'" *United States v. Willis*, 14 F.4th 170, 186 (2d Cir. 2021) (quoting Anna Lvovsky, *The Judicial Presumption of Police Expertise*, 130 Harv. L. Rev. 1995, 2025 (2017) and citing *United States v. Dukagjini*, 326 F.3d 45, 53–54 (2d Cir. 2003)). Thus, several limitations apply to such testimony. A case agent may not offer an opinion about a defendant's culpable role that is based on investigative expertise rather than personal perception, because that is not lay opinion under Fed.R.Evid. 701. *United States v. Garcia*, 413 F.3d 201, 216-17 (2d Cir. 2005). An agent who interprets recorded communications for the jury usurps the jury's function of deciding what inferences to draw from them. *United States v. Grinage*, 390 F.3d 746 (2d Cir. 2004) (reversing). And a witness may not

interpret coded language as lay opinion without the foundation Fed.R.Evid. 701 requires. *Garcia*, 291 F.3d 127.

Any opinion "based on scientific, technical, or other specialized knowledge" must satisfy Fed.R.Evid. 702 and must be disclosed under Fed.R.Crim.P. 16(a)(1)(G). Fed.R.Evid. 701(c). The FD-1023s themselves are hearsay, Fed.R.Evid. 801(c), 802, and law-enforcement reports are excluded from the public-records exception when offered against a criminal defendant. Fed.R.Evid. 803(8)(A)(ii). Testimony that an informant is "highly reliable" is improper bolstering. Under Fed.R.Evid. 608(a), evidence of a witness's truthful character is admissible "only after the witness's character for truthfulness has been attacked."

### C. Requested relief

The Court should (1) preclude overview or summary testimony by the case agent describing the investigation or the meaning of the evidence as a whole; (2) exclude any interpretive opinion (including definitions of Arabic or jihadist terms and characterizations of Mr. Alimehmeti's intent) unless it is offered by a properly qualified witness and disclosed under Fed.R.Crim.P. 16(a)(1)(G), and order those disclosures immediately; (3) exclude the FD-1023 narratives and any testimony or argument that a source is "reliable," "highly reliable" or "corroborated," unless and until the defense attacks the source's character for truthfulness; and (4) bar witnesses and counsel from describing Mr. Alimehmeti as an "ISIS member," "attack planner," "terrorist" or "jihadist." Such labels assume the very facts the jury must decide.

## CONCLUSION

For the foregoing reasons, Mr. Alimehmeti respectfully requests that the Court grant his omnibus motion *in limine* and enter an order: (I) excluding evidence and argument that relate only to dismissed Count Two; (II) precluding argument that independent advocacy or self-

equipping is "personnel" or "services,"; (III) accepting his stipulation and limiting ISIS atrocity and propaganda evidence  (IV) excluding his Albanian arrests and convictions, the related press reports, and his conduct in pretrial detention, and directing compliance with Fed.R.Evid. 404(b)(3); (V) excluding evidence of Sajmir Alimehmeti's case, conviction and sentence; (VI) requiring authentication and foundation for the screenshots, account attribution, translations and laptop, and holding a pretrial hearing; and (VII) precluding case-agent overview and interpretive testimony, undisclosed expert opinion, bolstering of informants, and prejudicial labels.

Dated: New York, New York
November 10, 2026

Respectfully submitted,

/s/ Sabrina P. Shroff

/s/ Megan Wolfe Benett

*Attorneys for Defendant Erald Alimehmeti*