**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

- v. -

ERALD ALIMEHMETI,

Defendant.

25 Cr. 120 (AT)

# ERALD ALIMEHMETI'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR A SEPARATE TRIAL ON THE SUPERSEDING INDICTMENT

In his motion to sever (ECF 76) and November 9, 2026 letter (ECF 82) (jointly, the "Motion to Sever"), Mr. Alimehmeti explained how severing the superseding indictment and proceeding to trial on the original indictment's Count One charge and government theory is the only practical way to preserve both his right to proceed to trial on December 7, 2026, and his right to adequate time to prepare a defense to the two new counts of the superseding S1 Indictment.

The government's 19-page opposition (ECF 91) discusses Rule 13 consolidation, Rule 8(a) joinder, *Blockburger*, and the Speedy Trial Act clock, but fails to grapple with, let alone answer, the basic question Mr. Alimehmeti's Motion to Sever actually raises and this Court should rule on: How can the Court best protect Mr. Alimehmeti's fundamental rights given the government's decision to change its entire prosecution theory after two years and just one month before trial? The plain answer is the one proposed by defense counsel – the Court should order that the trial on the original indictment's Count One charge and government theory will proceed on December 7, 2026, while severing the S1 Indictment counts for a later trial on a schedule that allows for discovery, expert disclosure, and motion practice.

The government may seek a superseding indictment, but when, as here, it does so in a way that results in unfair prejudice to a defendant, the Court should not ignore that prejudice, as the government urges. Rather, the Court must impose a remedy – here, severance – that cures that prejudice.

## ARGUMENT

### A. Severance is appropriate here because the government repeatedly said one thing for two years and did another on the eve of trial, severely prejudicing Mr. Alimehmeti

Let us be clear about what has happened here, and the obvious prejudice facing Mr. Alimehmeti as a result of the government's actions. Mr. Alimehmeti has been detained since November 2024. In March 2025, he was charged with two counts: one under 18 U.S.C. § 2339B and one under § 842(p). ECF 15. This Court dismissed the § 842(p) count and at every step of this prosecution, the government told the defense it would try this case on the remaining § 2339B count, which concerned Mr. Alimehmeti's attempt to provide "personnel and services" – namely, himself – to ISIS. The government made this representation orally and in writing. When it prevaricated in writing – by adding the phrase at this time – defense counsel followed up and was repeatedly told the government was proceeding on "B, 2339B".

It said so repeatedly during lengthy plea negotiations, and even after the plea proceeding was aborted by Mr. Alimehmeti. It said so after defense counsel asked about this exact issue more than once. ECF 7 at 8. It said so after consulting its own leadership. *Id.* And it did not just give that assurance; it explained, with detailed legal and conceptual reasons, why it would go to trial on that single count. ECF 76 at 1, 9. Government counsel explained its practice and thought process and repeatedly reinforced a trial on one count --- 2339B. And, that is why defense counsel retained only one expert – Tore Hamming. Because after the plea failed before this Court and then again before Magistrate Judge Stein, each time we asked and each time the answer remained the same:

2339B was the sole trial count.

On October 23, 2026, the Court told the parties that, after five adjournments, it expected trial to go forward on December 7, 2026 as scheduled. ECF 76 at 9. The defense properly relied on those repeated assurances, which is precisely what defense counsel are supposed to be able to do; after all the Department of Justice enjoys the presumption of regularity.

Mr. Alimehmeti therefore prepared for a § 2339B trial on December 7, 2026, and, among other things, located an ISIS expert suited to that charge. No other expert was sought as none was needed. It was a one count indictment – the government had failed to oppose a motion to dismiss Count 2; then had sought to avoid an adverse ruling by this Court arguing that a formal dismissal of the Count was not necessary (wrong) as the issue was "moot" since the government did not intend to proceed to trial on Count 2. See, Government Reply to Defense's Motion to Dismiss Count 2 of the Indictment, ECF # 62.

On November 4, 2026, the defense timely served notice of its expert. ECF 91 at 3; ECF 77 at 3. *The very next day*, November 5, the government obtained the S1 Indictment, with no notice of any kind to defense counsel or this Court.[1] The S1 Indictment recasts the material support theory under § 2339A, which has different elements and calls for entirely different expert testimony. It also adds a chemical weapons count under § 229, a statute that had never appeared in any charging instrument, had never been raised with the defense, and requires its own scientific and technical experts and its own motion practice. ECF 74; ECF 76 at 3–6.

---

[1] The government's only answer to this history is buried in a single conclusory footnote, which says – without explanation or any factual support – that the defense's description is "not accurate." ECF 91 at 3 n.1. The government does not explain what is inaccurate. It does not deny the plea-negotiation assurances, and it offers nothing to contradict them. The Court should reject this half-hearted conclusory footnote; the government's two years of representations to defense counsel stand unrebutted. Not even during plea negotiations did the government say – rejecting a plea offer would lead to additional charges; it did say that rejecting the plea offer could result in a higher sentence.

Two days later, on November 7, 2026, the government announced that it would try all three counts, drawn from two separate charging instruments, at the December 7 trial. ECF 77 at 2. The government's own letter concedes that the new charges require "experts in explosives and chemical weapons" whose testimony "was not necessary to prove the elements of Original Count One. *Id.* at 3.

On November 13, 2026, the government served notice that it intended to introduce the testimony of three experts at trial. Two of the three experts – Kerri Giroux, a chemist and Forensic Examiner with the FBI laboratory's explosives unit, and David Krueger, an FBI Supervisory Special Agent Bomb Technician and Explosives and Explosives and Hazardous Device Examiner – are obviously there to provide the expert testimony the government concedes is required for the new charges stated in the S1 Indictment.

While the government has its apparent in-house "chemical weapon/explosives" experts,[2] defense counsel has none, and to find, retain, and prepare a rebuttal expert by December 7, 2026 is impossible. Defense counsel has no ready stable of experts, like the government has in the FBI. It must search for and find a suitable expert, receive approval for CJA payment of the expert, and give that expert the time and information needed for him/her to reach a reasoned expert opinion. That the government would force Mr. Alimehmeti to proceed to trial without expert testimony, even as it proceeds with two experts, is sufficient prejudice to Mr. Alimehmeti rights as a defendant, standing alone, to show why the S1 Indictment must be severed from the December 7, 2026 trial.

Nor does the government's blithe suggestion (in a footnote) that Mr. Alimehmeti could "seek a brief adjournment" (ECF 91 at 12) solve matters. In setting the trial date, the Court was

---

[22] Mr. Alimehmeti intends to challenge the admission of testimony by those witnesses after he has consulted with experts; of course, he has no in-house experts sitting around to give us assistance.

clear that, given its schedule, the trial would take place on that date. The defense responded by getting ready to try the case stated in the original indictment, as buttressed by the government's repeated representations. Defense counsel did so because Mr. Alimehmeti is ready to try the charge/count he has had notice of and faced for two years now. He should not now be forced to make the "Sophie's choice" of either giving up his trial date to prepare a defense to charges the government created a few days ago, or go to trial materially unprepared on those charges given their late addition. The only reasonable way to proceed, given the government's decision to discard its prior representations and obtain the S1 Indictment just a month before trial, is to sever the charges in the S1 Indictment from the December 7, 2026 trial. Any other remedy will not cure the material unfair prejudice to Mr. Alimehmeti.

**B. The law supports the remedy of severance in these circumstances**

The caselaw the government cites in opposition to the motion to sever establishes only that superseding indictments are permissible in general. *United States v. Rojas-Contreras*, 474 U.S. 231 (1985); *United States v. McGee*, 564 F.3d 136 (2d Cir. 2009); *United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003); *United States v. Pastor*, 419 F. Supp. 1318 (S.D.N.Y. 1975). Sure. No one disputes that fundamentally basic proposition of law.

The relevant question is whether the new S1 Indictment in this case, returned at this time and in this way, prejudices the defendant. Even in holding that a new indictment does not necessarily restart the 30-day preparation period under the Speedy Trial Act, the Supreme Court made clear that it was not holding "that a defendant must always be compelled to go to trial less than 30 days after the filing of such an indictment," pointing to the trial court's authority to protect a defendant where "the Government seeks a superseding indictment which operates to prejudice a defendant." *Rojas-Contreras*, 474 U.S. at 236. The Supreme Court there discussed the ordinary superseder, which "drop[s] charges or parties or . . . make[s] a minor correction, leaving the

charges and the evidence necessary to defend against them unaffected." *Id.* (Blackmun, J., concurring in the judgment). The S1 Indictment is no ordinary superseder; it is the opposite. And the severe prejudice to Mr. Alimehmeti should those surprise charges be part of the December 7 trial is manifest. *See* Argument, Point A, *supra*; *see also* ECF 76, ECF 82.

To determine if a new indictment "materially broadens or amends the original charges," the Second Circuit asks whether new charges "allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence," and treats notice as the "touchstone." *Salmonese*, 352 F.3d at 622; *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir. 1986)(addressing statute of limitations objection). Courts in this Circuit also ask whether "a reasonable defendant [would] be surprised by new allegations" and whether "the burdens of defense [were] appreciably enhanced." *United States v. Gigante*, 982 F. Supp. 140, 156 (E.D.N.Y. 1997)(discussing relation-back doctrine). Every one of those factors is present here. And here the surprise (and additional burdens) came *after* the government had affirmatively and repeatedly told the defense trial would proceed *only* on the original § 2339B charge. *Cf. Pastor*, 419 F. Supp. 1318 (finding no prejudice in part because the prosecutor had told defense counsel in advance that a superseder was coming and what it would charge).

When the government obtains a new indictment for improper strategic reasons – such as to "buttress its case on other counts" (*United States v. Jones*, 16 F.3d 487, 492 (2d Cir.1994)) or to "add essentially unrelated charges to … defendants [who] refused to plead" guilty (*United States v. Camacho,* 939 F.Supp. 203, 210 (S.D.N.Y.1996)) – courts will sever or even dismiss the new indictments. *See also United States v. Nachamie*, 101 F. Supp. 2d 134, 157 (S.D.N.Y. 2000) (granting severance of parties for separate trials after the government added a new object "that requires a completely new theory of defense" less than two months before trial). Here, the

government has offered no explanation at all for its last-minute, unnoticed "superseding" indictment. But whatever the government's intent, Mr. Alimehmeti's right to a fair trial on December 7, 2026 will be extinguished absent severance. Thus, severance is appropriate and required here.

## **CONCLUSION**

Footnote 2 of the government's Opp. Br. is instructive, because it illustrates the government's mistaken view of this process. In it, the government suggests that, should the Court not consolidate two indictments that no single grand jury returned, it is "prepared to return an [sic] second superseding indictment containing all three counts" to "cure" an "indictment" problem (ECF 91 at 4 n.2), as if the issue before the Court is some minor procedural or scrivener's error. It is not. The Motion to Sever is grounded in Mr. Alimehmeti's fundamental right to proceed fairly and expeditiously to trial. The government's ad hoc suggestions (dismissal is moot; get another indictment), are not legally sound or fair to Erald Alimehmeti.

The government should not be permitted to leave charges open to change right up to jury selection so that it may fundamentally add or alter them at will, while the defense is forced to silently absorb the cost and prejudice of such gamesmanship without remedy. For the reasons stated herein, and in ECF 76 and ECF 82, we respectfully ask the Court to (i) order trial on the original § 2339B count to proceed on December 7, 2026; (ii) sever the S1 Indictment counts for a later trial on a schedule that allows for discovery, expert disclosure, and motion practice; and (iii) grant Mr. Alimehmeti such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 14, 2026

Respectfully submitted,

/s/ Sabrina P. Shroff
/s/ Megan Wolfe Benett

*Attorneys for defendant Erald Alimehmeti*